**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| JESSICA HIRNER, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 2:21-CV-38 SRW |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant(s). | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on review of an adverse ruling by the Social Security Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in support of the Complaint. ECF No. 24. Defendant filed a Brief in Support of the Answer. ECF No. 27. Plaintiff did not file a reply and the time for doing so has passed. The Court has reviewed the parties' briefs and the entire administrative record, including the transcripts and medical evidence. Based on the following, the Court will reverse the Commissioner's denial of Plaintiff's application and remand the case for further proceedings.

---

[1] At the time this case was filed, Andrew M. Saul was the Commissioner of Social Security. Kilolo Kijakazi became the Commissioner of Social Security on July 9, 2021. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name, and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Kilolo Kijakazi for Andrew M. Saul in this matter.

1

I.      **Factual and Procedural Background**

On October 24, 2018 and November 16, 2018, Plaintiff Jessica Hirner protectively filed

applications for disability insurance benefits ("DIB") under Title II, 42 U.S.C. §§ 401, *et seq.*,

and supplemental security income (SSI) under Title XVI, 42 U.S.C. §§ 1381, *et seq.*[2] Tr. 158-59,

259-74. Plaintiff's applications were denied on initial consideration. Tr. 164-75. On May 22,

2019, she requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 176-77.

Plaintiff appeared for a telephonic hearing, with the assistance of counsel, on April 20,

2020. Tr. 31-78. Plaintiff testified concerning her disability, daily activities, functional

limitations, and past work. *Id*. The ALJ also received testimony from vocational expert ("VE")

Jeffrey F. Magrowski, Ph.D. *Id*. at 70-78. On October 6, 2020, the ALJ issued an unfavorable

decision finding Plaintiff not disabled. Tr. 8-30. Plaintiff filed a request for review of the ALJ's

decision with the Appeals Council. Tr. 248-50. On April 20, 2021, the Appeals Council denied

Plaintiff's request for review. Tr. 1-7. Accordingly, the ALJ's decision stands as the

Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court

accepts the facts as presented in the parties' respective statements of facts and responses. The

Court will discuss specific facts relevant to the parties' arguments as needed in the discussion

below.

II.     **Legal Standard**

A disability is defined as the inability "to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to

---

[2] The underlying record reflects Plaintiff previously filed for DIB and SSI benefits, and an ALJ issued a
determination concluding she was not under a disability from September 1, 2014 through July 17, 2018. Tr. 92-110.
The alleged onset date in the instant action is July 18, 2018. Tr. 14, 112, 136.

result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe impairment "which significantly limits claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains

the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work which exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At

Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

## III.   The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2018. Tr. 14. Plaintiff has not engaged in substantial gainful activity since the alleged onset date of July 18, 2018. *Id*. Plaintiff has the following severe impairments: "schizophrenia/schizoaffective disorder, bipolar disorder, generalized anxiety disorder, attention deficit-hyperactivity disorder (ADHD), polysubstance abuse and degenerative disc disease of the lumbar spine." *Id*. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of

one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 14-16. The ALJ

found Plaintiff had the following RFC through the date last insured:

> [Plaintiff] has the residual functional capacity to perform medium work as defined
> in 20 CFR 404.1567(c) and 416.967(c) except she can only occasionally climb
> ladders, ropes and scaffolds. She can perform routine, repetitive tasks, with
> sufficient concentration to persist at such tasks at an acceptable pace with standard
> breaks. Her working environment should involve few changes in the work setting,
> with only occasional work-related judgments required. In addition, she should not
> be required to engage in tandem tasks and she should have only occasional
> interaction with supervisors, co-workers and the public.

Tr. 16. The ALJ found Plaintiff is unable to perform any past relevant work as a store laborer or

forklift operator. Tr. 23. The ALJ further found Plaintiff was born on March 16, 1982, and was

36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset

date. Tr. 18. Plaintiff has at least a high school education. *Id.*

The ALJ determined the transferability of job skills is not an issue in this case because

Plaintiff's past relevant work is unskilled. *Id.* Relying on the testimony of the VE and

considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs

existing in significant numbers in the national economy which the Plaintiff could perform,

including representative occupations such as packer (*Dictionary of Occupational Titles* ("*DOT*")

No. 558.687-010, with approximately 25,000 positions nationally), crate liner (*DOT* No.

920.687-078, with approximately 10,000 positions nationally), and laundry worker (*DOT* No.

361.684, with approximately 50,000 positions nationally). Tr. 23-24. The ALJ concluded

Plaintiff has not been under a disability, as defined in the Social Security Act, from July 18, 2018

through the date of her decision issued on October 6, 2020. *Id.*

IV.     **Discussion**

Plaintiff argues her RFC is not supported by substantial evidence for two reasons: (1) the ALJ failed to properly evaluate all of the opinion evidence in the record; and (2) the ALJ did not properly consider her subjective symptoms. ECF No. 24.

### A. Opinion Evidence

Plaintiff asserts the ALJ failed to properly analyze the persuasiveness of five medical opinions within the underlying record.[3] Specifically, she argues, "[t]here was no discussion of the consistency of the opinions with the evidence from other medical and nonmedical sources" and "[t]here was an insufficient discussion of how the evidence supported the opinion[.]" *Id.* at 4.

For claims like Plaintiff's, filed after March 27, 2017, an ALJ evaluates medical opinions pursuant to 20 C.F.R. § 404.1520c. These new rules provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, an ALJ is to evaluate the persuasiveness of any opinion or prior administrative medical finding by considering the: (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors. 20 C.F.R. § 404.1520c(c).

---

[3] The medical record in this case is voluminous. Upon review, however, a significant portion of the medical record includes treatment notes from December 2010 to June 2018, which are prior to her alleged onset date and outside of the relevant time period. *See* Tr. 402-1122, 1134-1143, 1147-1172, 1266-1410, 1434-1517, 1547-1622.

The rules make clear that supportability and consistency are the "most important factors;" therefore, an ALJ must explain how she considered these factors in the decision. 20 C.F.R. § 404.1520c(b)(2). An ALJ may, but is not required to, explain how she considered the remaining factors. *Id. See Brian O v. Comm'r of Soc. Sec.*, 2020 WL 3077009, at *4 (N.D.N.Y. June 10, 2020) (quoting 20 C.F.R. § 404.1520c(a), (b)) ("Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how he or she considered the medical opinions' and 'how persuasive he or she finds all of the medical opinions.'" (alterations omitted)).

As discussed below, the Court finds the ALJ appropriately analyzed the opinion of Nurse Practitioner Westhoff, but failed to properly evaluate the remaining four medical opinions.

### 1. Nurse Practitioner Geoff Westhoff

Plaintiff was treated by Nurse Practitioner ("NP") Geoff Westhoff at Mark Twain Behavioral Health. Tr. 378-83 (listing office visits with NP Westhoff). On March 18, 2020, NP Westhoff completed a Mental Medical Source Statement ("MMSS"), which described Plaintiff to have marked interference in her ability to maintain the concentration needed to perform simple routine tasks eight hours per day, five days per week. Tr. 1791. NP Westhoff estimated she would be 21-30% below average in her overall pace if asked to perform simple tasks in a low-stress environment. *Id.* He also indicated Plaintiff had moderate or marked limitations in the categories of understanding, remembering, or applying information; adapting or managing herself; and interacting with others. *Id.* at 1793. He opined Plaintiff would not be able to perform in the proximity of coworkers without being distracted by them, could not perform in a setting with the general public, and would be late or need to leave work early at least three times per

8

month. *Id.* at 1793-94. However, he did state that she could perform in a setting where supervisors provided simple instructions for non-detailed tasks with no more than four supervisor contacts per day. *Id*. NP Westhoff explained his opinions were based on objective signs and symptoms, which included "isolation, poor hygiene, auditory and visual hallucinations, pressured speech, flight of ideas at times, fidgety, [and] confusion." *Id.* at 1796.

As to the supportability factor, the ALJ determined there was "no persuasive support in the record for a finding [Plaintiff] would arrive late, leave early or miss work more than three times per month." Tr. 22. Although NP Westhoff listed Plaintiff's symptoms as "isolation, poor hygiene, auditory and visual hallucinations, pressured speech, flight of ideas at times, fidgety, [and] confusion," he did not explain how those symptoms would cause limitations in Plaintiff's ability to maintain employment. Tr. 1796. *See* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his . . . prior administrative medical finding(s), the more persuasive the . . . prior administrative medical finding(s) will be."). *See also Bilalic v. Kijakazi*, 2022 WL 1451671, *5 (E.D. Mo. May 9, 2022) (merely listing diagnoses is not a sufficient explanation).

Notably, some of the symptoms that NP Westhoff listed were not supported by his own treatment notes. For example, in the MMSS, he wrote "poor hygiene," but the record reflects little to no issues with hygiene. *See, e.g.*, Tr. 1028, 1033, 1225, 1229, 1240, 1244, 1658, 1696, 1700, 1704, 1708, 1712, 1716, 1725, 1730, 1734, 1739. NP Westhoff indicated Plaintiff had "pressured speech," but the majority of his own treatment notes characterized her speech as "normal." *See, e.g.,* Tr. 1042, 1051, 1059, 1067, 1075, 1088, 1096, 1148, 1156, 1165, 1174, 1184, 1748, 1756, 1764, 1772, 1826, 1832, 1838. In fact, the record often described Plaintiff's speech to be "clear" and not pressured. *See, e.g.,* Tr. 1705, 1708, 1712, 1716, 1730, 1739, 1743,

1842, 1848, 1853, 1863. Additionally, NP Westhoff never mentioned confusion as a symptom, and the record reflects Plaintiff regularly denied symptoms of confusion to her physicians. *See* Tr. 850, 1259, 1420, 1500, 1540.

As to the consistency factor, the ALJ found NP Westhoff's opinion to be "unpersuasive since it [wa]s inconsistent with the claimant's routinely unremarkable mental status examinations and her self-reported level of function." Tr. 22. The ALJ acknowledged her mental status examinations reflected "some anxiousness, with impaired insight and judgment," but were "otherwise normal." Tr. 15. The ALJ cited to numerous examinations performed by her treating providers. *See* Tr. 15. On July 19, 2018, Plaintiff told NP Westhoff her medication regimen was "working well." Tr. 1173. Upon mental examination, and despite reporting auditory hallucinations, she was described to have a normal appearance, behavior, activity level, orientation, speech, affect, thought process, cognition, and impulse control. Tr. 1173-74. On August 24, 2018, she told NP Westhoff she was "doing good." Tr. 1183. Her mental exam results were the same, except her behavior was described as "distressed. Tr. 1183-84. On September 28, 2018, Plaintiff reported visual hallucinations in the form of "shadows." Tr. 1192-93.

On November 5, 2018, Plaintiff continued to report auditory and visual hallucinations, describing them as "a lot of chatter," but declined changes to her psychiatric medication regime. Tr. 1201. Upon a mental status exam, she exhibited a normal appearance, activity level, orientation, speech, thought process, cognition, and impulse control, despite having a distressed behavior, abnormal affect, insight, and judgment. Tr. 1201-1202. On October 12, 2018, she underwent an annual psychosocial assessment, which revealed a completely normal mental status

exam, including general appearance, motor activity, speech, interview behavior, flow of thought, mood and affect, content of thought, sensorium, intellect, and insight and judgment. Tr. 1224-26.

On November 13, 2018, Plaintiff appeared to the Hannibal Regional Hospital Emergency Room with complaints of excessive urination, nausea, vomiting, and back pain. Tr. 1539. Upon examination, however, Plaintiff was negative for psychological symptoms. Tr. 1540. Significantly, Plaintiff denied any and all symptoms of agitation, anxiety, auditory or visual hallucinations, depression, insomnia, memory loss, mood swings, paranoia, and suicidal ideas. *Id*.

On April 25, 2019, Plaintiff reported heightened stress to NP Westhoff, but upon examination, she exhibited normal appearance, behavior, activity level, orientation, speech, affect, thought process, cognition, and impulse control. Tr. 1747-48. She denied visual or auditory hallucinations or delusions. Tr. 1748. On October 1, 2019, approximately six months before NP Westhoff completed the MMSS, Plaintiff reported she felt "good," had a stable mood, and was "looking for work and trying to get into school." Tr. 1763. Her mental exam was substantially normal, except for her insight and judgment. Tr. 1763-64.

From 2018 to 2020, Plaintiff's family physician consistently described her as "alert" and oriented x3." Tr. 1416, 1439, 1447, 1635, 1689. On June 1, 2018 and March 11, 2019, Plaintiff denied symptoms of anxiety, depression, hallucinations, mood changes, panic attacks, or relationship stress. Tr. 1438, 1635. On September 25, 2019 and December 18, 2019, Plaintiff appeared to a community support psychiatric rehabilitation program where she was described as an active participant with a casual appearance who exhibited normal behavior and mood, and clear speech. Tr. 1730, 1739. Treatment notes from February 11, 2020, described Plaintiff's

schizoaffective disorder as "managed with psych," and she reported a stable mood with improvement due to medication compliance. Tr. 1686.

In evaluating NP Westhoff's opinion, the ALJ also considered Plaintiff's own reports of functionality. Tr. 22. For example, Plaintiff affirmatively stated she was able to graduate from high school in the regular program and complete one year of college, had the ability to watch television, care for her therapy pet, see her family, go to church, count change, and drive a vehicle. Tr. 15, 293, 295-96, 820, 1035, 1231, 1246, 1657. The ALJ found it notable that her Function Report stated she lost a job due to issues getting along with people, but she subsequently told a consultative examiner she "got along in the workplace" and denied any past termination due to her attitude. Tr. 15 (comparing Tr. 298 to 1657). As to her hallucinations, Plaintiff described them to be "good voices" that were not harmful or bothersome to her, and she did not want her medications adjusted. Tr. 17, 1173, 1772. The ALJ also found it relevant that despite choosing to quit her substance abuse treatment program, her counselor described her as: "likeable personality, keeps herself up in appearance, able to get herself around, able to drive, [and] able to persevere." Tr. 18, 1663-64.

Based on a review of the record as a whole, the Court cannot find the ALJ erred in deeming NP Westhoff's MMSS opinion unpersuasive, or that the ALJ's characterization of Plaintiff's mental exams were inaccurate. The ALJ very clearly addressed the supportability and consistency factors. *See McClellan v. Kijakazi*, 2021 WL 4198390, at *3 (W.D. Mo. Sept. 15, 2021) ("By stating that Plaintiff's physical examinations 'do not show the level of dysfunction [plaintiff] suggested,' the ALJ sufficiently considered and articulated the consistency of [plaintiff's] medical opinion with other evidence in the record."). While Plaintiff argues that other evidence could support an opposite outcome, it is not the Court's duty to re-weigh the

evidence or review the factual record de novo. *See Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2002). "[T]he standard of review requires this Court to determine whether substantial evidence supports the ALJ's findings, not whether substantial evidence would also support contrary findings[.]" *Moss v. Colvin*, 2016 WL 3125886, at *5 (E.D. Mo. June 3, 2016). Therefore, the Court finds substantial evidence in the record as a whole supports the ALJ's findings as to NP Westhoff's opinion.

Plaintiff additionally contends the ALJ erred in considering NP Westhoff's opinion because the decision did not discuss his "disability scores." The Court cannot agree. The Eighth Circuit Court of Appeals has concluded that Global Assessment of Functioning ("GAF") scores have "little value" and the level of severity denoted by a GAF score does not correlate to the severity requirements under the Social Security Act. *See Nowling v. Colvin*, 813 F.3d 1110, 1115 n.3 (8th Cir. 2016) (citing *Jones v. Astrue*, 619 F.3d 963, 973-74 (8th Cir. 2010)) ("Moreover, the Commissioner has declined to endorse the [GAF] score for use in the Social Security and disability programs and has indicated that [GAF] scores have no direct correlation to the severity requirements of the mental disorders listings."). A "litany of GAF scores in the 41-50 range, although indicating a serious problem with occupational functioning in the DSM–IV sense, does not necessitate a finding of disabling limitations under the Act." *Doolittle v. Colvin*, 2014 WL 7369635, at *2 (W.D. Mo. Dec. 29, 2014). "[T]he failure to reference a [GAF] score is not, standing alone, sufficient ground to reverse a disability determination." *Jones*, 619 F.3d at 973 ("We are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place.") (citations omitted). Essentially, "GAF scores are to be treated like any other piece of evidence in the case record in that unless a GAF score is well-supported

and consistent with other record evidence it is entitled to little weight." *Evanoff v. Berryhill*, 2018 WL 4489362, at *6 (E.D. Mo. Sept. 19, 2018).

Thus, the Court finds the ALJ did not err in evaluating the persuasiveness of NP Westhoff's opinion.

### 2. Dr. Thomas Spencer

On May 8, 2019, Dr. Thomas Spencer, a consultative psychologist, completed a psychological evaluation. Tr. 1656-59. Dr. Spencer based his opinion on Plaintiff's allegations, a clinical interview, and specific medical records. *Id.* at 1656. He determined Plaintiff was "moderately limited in her ability to learn, recall and use information and to consistently stay on task," "moderately to markedly limited in her ability to interact with others effectively," and unable to manage her finances without assistance. *Id.* 1659.

After summarizing the evaluation, the ALJ found Dr. Spencer's opinion to be partially persuasive, explaining:

> Though Global Assessment of Functioning (GAF) scores are of little use in disability determinations since they consider irrelevant factors, such as transportation and housing, it is noted that Dr. Spencer assigned the claimant a GAF score of "55-60," indicating no more than mild to moderate limitations in any area of work-related mental function. His findings are somewhat persuasive to the extent that he did not appear to clearly find marked limitations in two areas of work-related mental function. His opinion is persuasive only to the extent that his recommended restrictions are consistent with the limitations detailed in the residual functional capacity finding above.

Tr. 22.

Plaintiff argues the ALJ erred by failing to include a "discussion of the consistency or supportability" factors and the "conclusory reasons given are not explained." ECF No. 24 at 6. In response, the Commissioner asserts the ALJ properly evaluated Dr. Spencer's report by finding the opinion to be supported by his GAF score of 55-60, and "the ALJ considered that Dr.

14

Spencer's assessments were persuasive to the extent they were consistent with the limitations contained in her RFC finding, which, in turn, was consistent with the record as a whole[.]" ECF No. 27 at 12.

While the ALJ arguably addressed the supportability factor by comparing Plaintiff's GAF score to Dr. Spencer's recommended restrictions, the Court agrees with Plaintiff that the ALJ did not comply with the regulations when evaluating the consistency factor. The ALJ summarily determined Dr. Spencer's opinion to be "persuasive only to the extent that his recommended restrictions are consistent with the limitations detailed in the residual functional capacity finding above." The ALJ did not cite any specific records that are inconsistent with Dr. Spencer's opinion or specify how, or which, other evidence contradicts his opinion. "Absent some explanation for finding an inconsistency where none appears to exist, [the court] will not fill in the gaps for the ALJ." *Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020) (internal quotations omitted). It is not enough to merely state an opinion is persuasive because "it is consistent with the claimant medical record, as more fully discussed above." *See Post v. Kijakazi*, 2021 WL 4355349, at *7 (E.D. Mo. Sept. 24, 2021). "[W]hile an ALJ's explanation need not be exhaustive, boilerplate or 'blanket statement[s]' will not do." *Lucus*, 960 F.3d at 1069 (quoting *Walker v. Comm'r, Soc. Sec. Admin.*, 911 F.3d 550, 554 (8th Cir. 2018)).

Thus, the Court finds the ALJ erred in analyzing the persuasiveness of Dr. Spencer's opinion.

### 3. Dr. Martin Isenberg

On May 10, 2019, non-examining State agent, Dr. Martin Isenberg, completed a Psychiatric Review Technique ("PRT"). Tr. 122-24, 129-31. Dr. Isenberg determined Plaintiff had mild limitations in her ability to understand, remember, or apply information, and moderate

limitations in her ability to interact with others, concentrate, persist, or maintain pace, and adapt and manage herself. Tr. 122. After providing a summary of Dr. Isenberg's opinion, the ALJ determined it was "persuasive since it is consistent with the medical evidence showing essentially normal mental status examinations throughout the record, as detailed above." Tr. 20.

The ALJ provided a detailed summary of Plaintiff's mental status examinations sufficient to support the determination that Dr. Isenberg's opinion of mild or moderate limitations were consistent with Plaintiff's rather normal mental status examinations. However, the ALJ made no effort to evaluate the supportability of Dr. Isenberg's opinion. The Commissioner argues the supportability factor was satisfied because "the ALJ recognized that Dr. Isenberg based his findings on his evaluation of Plaintiff's medical history." ECF No. 27 at 8-9. This is simply not enough to satisfy regulatory requirements. *See Pipkins v. Kijakazi*, No. 1:20 CV 161 CDP, 2022 WL 218898 (E.D. Mo. Jan. 25, 2022) (finding that the ALJ's failure to "explain" and "articulate" the supportability and consistency of medical opinion evidence was reversible error even when the ALJ elsewhere adequately summarized the evidence of record, and it supported the RFC determination).

The Eighth Circuit holds that an ALJ's failure to address either the consistency or supportability factors in assessing the persuasiveness of a medical opinion requires reversal. *Bonnett v. Kijakazi*, No. 21-1619 (8th Cir. 2021) (unpublished) (per curium) (citing *Lucus v. Saul*, 960 F.3d 1066, 1069-70 (8th Cir. 2020) (remanding where ALJ discredited physician's opinion without discussing factors contemplated in regulation, as failure to comply with opinion-evaluation regulation was legal error)). Accordingly, the ALJ's failure to consider the supportability of Dr. Isenberg's opinion warrants remand. *Id.*; *see also Dornbach v. Saul*, 2021 WL 1123573, at *7 (E.D. Mo. Mar. 24, 2021); *Hodges v. Comm'r, Soc. Sec. Admin.*, 2021 WL

16

2211108, at *3 (W.D. Ark. June 1, 2021); *Rife v. Comm'r, Soc. Sec. Admin.*, 2021 WL 1949385, at *3 (W.D. Ark. May 14, 2021).

Thus, the Court finds the ALJ erred in analyzing the persuasiveness of Dr. Isenberg's opinion.

### *4. Dr. Nancy Ceasar*

On April 5, 2019, non-examining State agent Dr. Nancy Ceasar completed a Physical RFC Assessment. Tr. 125-28. Dr. Ceasar opined that Plaintiff could occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk for a total of about 6 hours in an 8-hour workday; sit for a total of about 6 hours in an 8-hour workday; never climb ladders, ropes or scaffold; and frequently stoop. Tr. 126. She further indicated Plaintiff should avoid concentrated exposure to extreme cold or heat, wetness, humidity, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards. Tr. 127.

In evaluating the opinion, the ALJ indicated Dr. Ceasar "evaluated the claimant's medical history for the Agency in April 2019," and her RFC assessment was "generally persuasive, though the . . . medical evidence warrants additional postural limitations to account for any back pain or blood sugar fluctuations the claimant may experience in the workplace." Tr. 20. The ALJ makes no mention of the supportability or consistency factors. Again, such an omission requires remand. *See Pipkins v. Kijakazi*, 2022 WL 218898, at *4 (E.D. Mo. Jan. 25, 2022) ("Because the ALJ's cursory statement neither articulates the persuasiveness of [the doctor's] opinion nor explains the supportability or consistency factors in evaluating the opinion, it runs afoul of the Regulations.").

Thus, the Court finds the ALJ erred in analyzing the persuasiveness of Dr. Ceasar's opinion.

### 5. Dr. Michael Tentori

On March 15, 2019, State agent Dr. Michael Tentori completed a Disability

Determination Examination ("DDE"). Tr. 1639-46. He based the DDE on his review of

Plaintiff's available treatment records, Plaintiff's own summary of her medical history and

symptoms, as well as a physical examination. Tr. 1639-46. Dr. Tentori opined the following:

> [Plaintiff] has not been able to work for the past 5 years. Her last job was as a
> dietary aide for a nursing home. Her present problem with working is a
> psychiatric problem because of her bipolar 1, schizoaffective disorder with severe
> anxiety and agoraphobia. She has a hard time relating to the general public.
> Physically, she is capable of performing some type of work but emotionally this is
> going to be difficult. She can sit and stand without problems. Walking is okay[,]
> lifting[,] carrying, [and] handling all appear to be within normal limits, and lastly
> she can also hear and speak without problem. Traveling is a problem[.] [S]he does
> have a driver's license, but she does not drive because of her erratic blood sugars,
> which go up and down and there is reported hypoglycemia with dizziness and
> lightheadedness. Therefore, her driving has become hindered.

Tr. 1646.

The ALJ summarized Dr. Tentori's DDE and found it to be unpersuasive. The ALJ

explained,

> Dr. Tentori's conclusion that the claimant has been unable to work for the past
> five years due to her psychiatric issues is unpersuasive since his examination was
> for the purpose of assessing her physical function and his observations do not
> indicate any physical impairment that would prevent the claimant from working.
> It is noted that the claimant denied any anxiety or depression when she visited a
> physician complaining of foot pain in July 2018, the month she alleges becoming
> disabled. Further, it is inconsistent with the remainder of the record.

Tr. 21.

Plaintiff argues the ALJ again failed to properly address consistency and supportability.

First, Plaintiff asserts that just because Dr. Tentori was directed to perform a physical exam

should not mean his opinions on her mental impairment were automatically unpersuasive.

18

Second, Plaintiff contends the ALJ's citation to a July 2018 podiatry visit should not speak to the persuasiveness of an opinion related to anxiety and depression.

The Court agrees with Plaintiff. The ALJ's decision to find Dr. Tentori's opinion unpersuasive because "his examination was for the purpose of assessing her physical function" does not address supportability or consistency, but rather speaks to Dr. Tentori's "relationship with the plaintiff, including length, purpose, and extent of treatment relationship" and "specialization" of the physician. *See* 20 C.F.R. § 404.1520c(c). While the purpose of an examination and specialization of a provider are relevant factors, the rules make clear that they are factors separate from consistency and supportability. *See id.* Section 416.920c(b) requires more than a conclusory statement as to the supportability and consistency factors so a reviewing court can make a meaningful assessment of a challenge to an ALJ's evaluation of the persuasiveness of various medical opinions.

The ALJ found Dr. Tentori's opinion was inconsistent with one podiatry record in which Plaintiff denied symptoms of anxiety and depression and was overall "inconsistent with the remainder of the record." While these statements are arguably conclusory in that it is unclear how Dr. Tentori's DDE was contrary to a July 2018 podiatry record addressing foot pain, *see Tr.* 1428-29, more importantly, there is no discussion regarding supportability. In articulating the supportability factor, an ALJ may note the physician's own treatment does not support the physician's opinion, the physician's opinion stems from a checklist, the physician did not consider certain evidence, the physician did not examine the claimant, or the physician did not provide a detailed explanation for the opinion. *Starman v. Kijakazi*, 2021 WL 4459729, at *4 (E.D. Mo. Sept. 29, 2021) (listing cases). Here, the ALJ did not address any of these issues and did not otherwise articulate how he considered the supportability factor. *See Bonneau v. Saul*,

19

2021 WL 920981, at *5 (E.D. Ark. Mar. 10, 2021) (the ALJ was required to specifically address the supportability factor, despite the fact that the ALJ's decision thoroughly addressed the "consistency" factor).

Thus, the Court finds the ALJ erred in analyzing the persuasiveness of Dr. Tentori's opinion.

### B. Subjective Symptoms

Plaintiff argues the ALJ failed to properly evaluate her subjective symptoms in accordance with the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). Specifically, Plaintiff asserts the ALJ erred when she "selectively cited evidence concerning tasks which plaintiff was capable of performing and improperly disregarded her qualifying statements. The decision fails to explain how her activities are inconsistent with a finding of disability." ECF No. 24 at 11.

Because remand is required for reevaluation of the opinion evidence, the Court need not reach the issue of whether the ALJ sufficiently analyzed Plaintiff's subjective symptoms. Because the ALJ appeared to assess Plaintiff's subjective complaints, both physical and mental, on her evaluation of the medical evidence, any reevaluation of the latter will necessarily require reassessment of Plaintiff's symptoms. *See, e.g., Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [Plaintiff's] alternative ground for remand."); *Wilson v. Colvin*, 107 F. Supp. 3d 387, 407 n.34 (S.D.N.Y. 2015) (because the ALJ failed to develop the record, the Commissioner must "necessarily" reassess a claimant's RFC and credibility on remand); *Berry v. Kijakazi,* 2021 WL 4459699, at *9 (E.D. Mo. Sept. 29, 2021) ("Because remand is required, the Court does not address all of Plaintiff's arguments.").

20

**IV. Conclusion**

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts the ALJ's findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. The Court finds that the ALJ's decision is not supported by substantial evidence because the ALJ did not properly evaluate the opinion evidence within the record.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner of Social Security is **REVERSED** and that this case is **REMANDED** under 42 U.S.C. 1383(c)(3) and Sentence Four of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this opinion.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Kilolo Kijakazi for Andrew M. Saul in the court record of this case.

So Ordered this 8th day of August, 2022.

_____
STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE

21